IN RE PETITION OF PIERCE-ARROW MOTOR CAR COMPANY.
IN RE PETITION OF CHALMERS-DETROIT MOTOR CAR CO.
IN RE PETITION OF LOCOMOBILE COMPANY OF AMERICA.
IN RE PETITION OF POPE MANUFACTURING COMPANY.

*September 13—October 4, 1910.*

*Supreme court: Superintending control: Jurisdiction, when exercised: Writ of prohibition: Foreign corporations: Service of summons on agent: Contract of sale or of agency? Conspiracy: Where cause of action arises: Appeal.*

1. The jurisdiction of the supreme court in respect to its superintending control over inferior courts is not to be exercised upon light occasion, but only upon some grave exigency; the writs by which it is exercised will not be used to perform the ordinary functions of an appeal or writ of error; the duty of the court below must be plain and the actual or threatened violation thereof clear; the results must not only be prejudicial but must involve extraordinary hardship; the remedy by appeal or writ of error must be utterly inadequate; and the application for the exercise of the power of superintending control must be speedy and prompt.

2. In order that the duty of the court may be plain within the foregoing rule, the situation must be such that hardly more than a statement of the facts is necessary to convince the legal mind as to what that duty is. Where questions of law or fact are involved of such difficulty that a judge may reasonably, proceed-

ing considerately, commit judicial error, the power of superintending control will not be exercised, but the parties will be left to their remedy by appeal.

3. Where an application to vacate the service of process upon a foreign corporation, in an action where the cause of action arises within this state, involves the consideration of a long written contract between the corporation and the person upon whom service is made, relating to sales to and by the latter, from which it appears that, although the term "agent" is not used, it is a serious question whether an agency in fact is not thereby created, it cannot be said that the duty of the court to set aside the service is plain, within the meaning of the rule above stated.

4. In such a case the facts that an order denying the application is not appealable and that to obtain a review of the question on appeal defendant must permit the entry of a judgment by default against it for heavy damages, do not make a case of such exceptional hardship that the supreme court should intervene in the exercise of its power of superintending control. TIMLIN, SIEBECKER, and KERWIN, JJ., dissenting, are of the opinion that refusal to exercise the supervisory power in such a case amounts to a denial of due process of law.

5. Where a complaint by one foreign corporation against other foreign corporations for a conspiracy to ruin its business, charges one of the principal overt acts of the conspiracy, from which great damage is alleged to have resulted, to have been committed within this state, a substantial part at least of the cause of action arises within this state and, under subd. 15, sec. 2637, Stats. (1898), the summons may be served upon any agent of a defendant corporation having charge of or conducting any business for it in the state. TIMLIN, SIEBECKER, and KERWIN, JJ., dissenting, are of the opinion that, the gist of an action for conspiracy being not the combination but the damage done, the plaintiff corporation is damaged, if at all, where it exists and has its property, business, and good will.

6. Whether or not an agency was in fact created by a contract between a foreign automobile company and an individual or corporation within this state, which does not in terms designate the latter as agent, but provides for the sale to him or it of a certain number of automobiles at specified prices, prescribes certain territory within which such party shall have the exclusive right of sale, and contains other stipulations in regard to credits on repairs ordered, the supply of advertising matter, diligence on the part of the dealer in furthering sales, non-contest of patents, etc., so that service upon such dealer would bind

the foreign corporation, not decided. TIMLIN, SIEBECKER, and KERWIN, JJ., in dissenting opinion, take the view that such a contract is one of sale and not of agency.

7. An order denying an application to vacate the service of a summons on a foreign corporation on the ground that the person served was not an agent upon whom service was authorized, is not appealable, nor is it reviewable upon appeal from the final judgment if the defendant appears and defends upon the merits.

APPLICATIONS for writs of prohibition to restrain the further prosecution of an action in the circuit court for Milwaukee county, on the ground that the summons had not been properly served on petitioners. *Petitions denied.*

The facts of the case and the allegations of the petitions are fully set forth in the opinion of the court and the dissenting opinion.

For the petitioners there was a brief by *Quarles, Spence & Quarles,* and oral argument by *T. H. Spence.*

In opposition there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper,* of counsel, and oral argument by *J. B. Kemper.*

WINSLOW, C. J.   These are four separate petitions for writs of prohibition.·  The petitioners are all foreign manufacturing corporations and were joined as defendants with a large number of other foreign and domestic corporations in an action brought in the circuit court for Milwaukee county by the *Velie Motor Vehicle Company,* a foreign corporation, charging conspiracy to ruin its business and alleging damage to the amount of $500,000.   The summons and complaint in said action were attempted to be served on the petitioners by service upon certain persons and domestic corporations alleged to be agents of the respective petitioners transacting business for them in this state.   The petitioners separately moved in the circuit court, upon affidavits showing the contract relations between themselves respectively and the alleged agents upon whom service was attempted to be made,

for orders setting aside the service in each case upon the
ground that the persons and corporations upon whom service
was made were not agents of the petitioners within the mean-
ing of the statute. These motions were denied, and the peti-
tioners now ask this court to exercise its power of superin-
tending control and issue writs of prohibition to the circuit
court and its judge, commanding that no further proceedings
be taken in that action and that the motions to set aside the
attempted service be granted.

The power of "a general superintending control over all
inferior courts" which the constitution (art. VII, sec. 3)
grants to this court was first extensively considered and its
limits defined in the case of *State ex rel. Fourth Nat. Bank
v. Johnson,* 103 Wis. 591, 79 N. W. 1081. The subject has
been discussed in a number of cases since that time, but no
attempt has been made either to vary or enlarge the general
principles laid down in the first named case, but, on the other
hand, in all of the subsequent cases those principles have been
either literally or in substance approved and applied.

Those principles in substance are that this jurisdiction
is not to be exercised upon light occasion, but only upon some
grave exigency; that the writs by which it is exercised will
not be used to perform the ordinary functions of an appeal or
writ of error; that the duty of the court below must be *plain;*
its refusal to proceed within the line of such duty or, on the
other hand, its intent to proceed in violation of such duty
must be *clear;* the results must be not only prejudicial but
must involve extraordinary hardship; the remedy by appeal
or writ of error must be utterly inadequate; and the applica-
tion for the exercise of the power of superintending control
must be speedy and prompt. *State ex rel. Fourth Nat. Bank
v. Johnson, supra; State ex rel. Milwaukee E. R. & L. Co. v.
Circuit Court,* 133 Wis. 442, 113 N. W. 722; *State ex rel.
Milwaukee v. Ludwig,* 106 Wis. 226, 82 N. W. 158; *State ex
rel. Umbreit v. Helms,* 136 Wis. 432, 118 N. W. 158.

Does the present case come within these principles? We think not. One of the cardinal rules is that the duty of the court below must be *plain*. The situation must be such that hardly more than a statement of the facts is necessary to convince the legal mind as to the duty of the court. Where there is no such clear and obvious duty based either upon common-law principles or upon express statute, but where questions of law or fact, or both, are involved of such difficulty that "a judge may reasonably, proceeding considerately, commit judicial error," the court will refuse to intervene under its power of superintending control, but will leave the parties to their remedy by appeal. *State ex rel. Milwaukee E. R. & L. Co. v. Circuit Court,* 134 Wis. 301, 114 N. W. 455. The duty of the court cannot be said to be *plain* in the present case: difficult questions were presented to the trial court upon the motions to vacate the service; questions in the solving of which there was ample room for the ablest trial judge, after mature consideration, to commit error.

The complaint alleged conspiracy to ruin the plaintiff's business. One of the principal overt acts of this conspiracy from which great damage is alleged to have resulted is charged to have been committed in the state of Wisconsin. The damages caused by the overt acts in pursuance of the conspiracy form the gist of the action, hence it would seem that a substantial part at least of the cause of action arose within this state. In a case where the cause of action arises within this state service may be made upon the agent of a foreign corporation "having charge of or conducting any business therefor in this state." Subd. 13, sec. 2637, Stats. (1898). The affidavits submitted upon the motions to vacate the service disclosed that all of the persons and corporations served on as agents were purchasing automobiles of their respective principals and selling the same under long written contracts prescribing prices, time of payment, territory in which to sell, and many other things. The contracts are very carefully

drawn and do not use the word "agent," but it is a very serious question, to say the least, whether agencies in fact are not created by all of them. We do not now say that such agencies were created, but simply that the question is not one that can be answered with confidence at once either way. It is worthy the considerate and careful attention of any court and may well admit of different opinions by equally able legal minds. One of the conditions essential to the successful invoking of the power of superintending control is therefore wanting.

It is urged that the case is one of such exceptional hardship that this court should intervene and stop the proceedings in the court below notwithstanding the duty may not be plain. The argument runs thus: The order denying the motion to vacate the service is not appealable, nor can it be reviewed on appeal from final judgment if the defendants appear and defend the case on the merits, because by such appearance they waive the question of jurisdiction (*Corbett v. Physicians' C. Asso.* 135 Wis. 505, 115 N. W. 365); hence they can only raise the question by staying out of court, allowing judgment by default for an immense sum perhaps to be taken against them, which judgment will stand as a menace to their credit for months until they can bring their appeal to a hearing.

The argument is not without its weight, but we cannot admit its conclusiveness. Logically followed out, it would mean that in every case where large damages are claimed this court may be called upon to investigate and decide any question as to the sufficiency of the service of the summons before another forward step is taken in the trial court. The result would be that *mandamus, prohibition,* and *procedendo* would gradually but surely be used to perform the ordinary functions of an appeal, which this court has declared is not the proper function of those writs.

*By the Court.*—Motion denied in each case with $10 costs.

Timlin, J. (*dissenting*).    I feel obliged to dissent from the decision denying any relief to the moving parties.    An action was begun in the circuit court for Milwaukee county by the *Velie Motor Vehicle Company,* which pleads that it is. a corporation organized and existing under the laws of Illinois and has its principal office and place of business at Moline, in Illinois.    It is engaged in the manufacture and sale of automobiles.    Fifty-two foreign and four domestic corporations, all engaged in like business, are made defendants, and the action is one to recover damages in the sum of $500,000 suffered by the plaintiff and resulting from an alleged conspiracy between these fifty-six defendants to injure and destroy the said business of the plaintiff.    In furtherance of the alleged conspiracy it is charged that the defendants except the Kopmeier Motor Car Company have formed a combination, confederacy, or agreement under the name of the Association of Licensed Automobile Manufacturers which. constitutes an unlawful agreement or combination in restraint of trade, and notified the plaintiff to pay $14,000 and restrict its output and become a member.    Upon plaintiff's. refusal to accept these terms and become a member they warned plaintiff that unless it joined the association and complied with its demands the defendants would prevent it from carrying on its business and injure and ruin its business.    Defendants have induced and are inducing persons having contracts with the plaintiff for the purchase of automobiles to break such contracts, and have made threats and. misrepresentations to induce or coerce such persons so to do.. They have also urged manufacturers of material and of parts of machines from whom plaintiff is accustomed to or obliged to purchase, not to sell to plaintiff, and have threatened not to buy from such manufacturers of material nor sell to such. purchasers of automobiles if such manufacturers or purchasers dealt with the plaintiff.    The complaint is silent with: reference to where the conspiracy was entered into or where

these threats or inducements were made, but the fair inference is that it was outside of the state. It certainly is not shown that this took place within the state. There is then pleaded an act done within this state in pursuance of the conspiracy by which the Kopmeier Motor Car Company was induced to breach its contract with plaintiff and to refrain from exhibiting plaintiff's cars. Some of the defendants make no question of the regularity or validity of the service of the summons upon them, but the *Pierce-Arrow Motor Car Company,* the *Chalmers-Detroit Motor Car Company,* the *Locomobile Company of America,* and the *Pope Manufacturing Company* each appeared specially for that purpose and moved in the circuit court to have the service of the summons and complaint upon it set aside as unauthorized and invalid. The circuit court denied the motion.

Under the laws of this state the order refusing to set aside such service is not appealable. Sec. 3069, Stats. (1898); *Latimer v. Central E. Co.* 101 Wis. 310, 77 N. W. 155; *Welsher v. Libby, McNeil & Libby,* 106 Wis. 291, 82 N. W. 143. Nor can such an order be brought to this court by ordinary writ of error. *Paine v. Chase,* 14 Wis. 653; *Eaton v. Gillett,* 16 Wis. 546. Under the laws of this state the person upon whom defective service is made is not allowed, after he has appeared specially for that purpose and moved the court to set aside the service, to file an exception, thereafter to proceed to trial on the merits, and have this exception reviewed on appeal from or writ of error to the judgment. If he would assert his right to be notified or served according to law he must appear specially in the circuit court for the purpose of vacating the service only, and, if his application is denied, stay out of court thereafter for all purposes and submit to a judgment against him and take his chances upon appeal from or writ of error to that judgment rendered against him by default. In this way only can he assert his right to vacate the defective or unlawful service. *Corbett v.*

*Physicians' C. Asso.* 135 Wis. 505, 115 N. W. 365.    The statute under which the service of the summons was in this case attempted is as follows:

"If against any other foreign corporation, to any such officer being within the state, or to any agent having charge of or conducting any business therefor in this state, or any trustee or assignee of such corporation, or upon the secretary of state, as provided in sec. 1770*b*.    But such service can be made upon a foreign corporation only either when it has property within the state or the cause of action arose therein, or the cause of action exists in favor of a resident of the state, and upon the secretary of ˙state only when the cause of action arises out of business transacted in this state or when the defendant has property therein."    Subd. 13, sec. 2637, Stats. (1898).

The relators made proof by affidavit having annexed thereto their respective contracts with the person actually served that such person was not an agent, much less an agent having charge of or conducting business for the corporation in the state.    The written instrument creating the relations between the *Pierce-Arrow Motor Car Company* and the person served shows that this corporation agreed to build for and sell to this dealer twenty Pierce-Arrow automobiles at prices fixed, payable in cash on delivery, and that the corporation agreed not to enter into any contract with any other person for the sale of its automobiles in certain specified territory during a stated period.    Credit was to be extended to the dealer for parts and repairs ordered, and the corporation agreed to advertise the automobiles and to supply the dealer with catalogues and to sell in unoccupied territory at wholesale prices only to those who are regularly engaged in the retail business. The dealer agreed to use diligence to further sales, not to sell outside the designated territory without written permission of the corporation, not to sell cars of the model of the current year less than list prices, to pay for what he ordered, in the event of selling through other dealers to execute with the latter

a written contract similar to that existing between him and the corporation, not to contest certain letters patent nor to aid others in doing so, not to infringe on this patent, nor make, keep, sell, or deal in any gasoline automobiles not manufactured under license of this patent, not to sell, consign, or deliver any vehicle so licensed to any one making or selling, using or having on hand any unlicensed vehicles. The contract also contains provisions relating to a deposit to be made by the dealer with the corporation to secure payments and some other things not deemed relevant here. I see nothing in this which makes the dealer an agent of the manufacturer having charge of or conducting any business for such manufacturer. These words must have a reasonable construction. The dealer does not act for the corporation but for himself, hence is not an agent. He does not conduct business or have charge of business for the defendant but for himself. The contract is one of sale, not one of agency. *Willcox & Gibbs S. M. Co. v. Ewing,* 141 U. S. 627, 12 Sup. Ct. 94, is not in point, for there the contract contained provisions not found here and looking toward the relation of agency with express references to the person as agent.

But even in case where the contract is one of agency the statute requires something more. The plaintiff is a foreign corporation. Its domicile is in Illinois and its headquarters or principal office in that state. The gist of a civil action for conspiracy is not the combination but the damage done. The plaintiff was damaged, if at all, where it exists and has its property, business, and good will. It could not, therefore, sue another foreign corporation in this state by service even upon a conceded agent of the latter corporation, because the cause of action arose in Illinois, not in this state, and the plaintiff is not a resident of the state. The relators are not shown to have property within the state. For all these reasons the service was insufficient to confer upon the circuit court jurisdiction of the person of the relator first named.

I have not set forth an analysis of the contracts of the other three relators, because if either one is entitled to a writ from this court the majority decision is wrong and the writ should be granted. It is conceded that the power to grant relief in such case exists in this court by virtue of its supervisory control of the circuit court. Const., art. VII, sec. 3. The supervisory jurisdiction of this court is not to be confounded with the original jurisdiction thereof. I recognize that, in order to arouse the exercise of the supervisory power of this court, "the duty of the court must be plain, the refusal of the court below to proceed within its jurisdiction to perform that duty must be clear, the results of such refusal prejudicial, and the remedy, if any, by appeal or writ of error utterly inadequate, and the application to this court for relief speedy and prompt." *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 591, 623, 624, 79 N. W. 1081. But I believe that this is clearly such a case, and a stronger case for the exercise of the supervisory power than the case last cited. I attach no weight to the objection that a writ of prohibition was asked for, or to technical rulings relating to the office and function of that writ. The law of this state as announced in the case last cited is, "The writ will be framed to meet the exigencies of the case." Id. 624. It may be a writ in the nature of a writ of *certiorari* or a writ in the nature of a writ of error would be more appropriate, but the discussion of the form or scope of these ancient writs as that scope was in an age when the judicial power was vested in the sovereign and the court exercised such jurisdiction as was delegated to it by the king's writ, seems to me to be small and pedantic in cases like this, where the constitution and not the writ is the measure of the court's jurisdiction. The relator has no other relief. It is asserting a constitutional right secured to it by the federal and state constitutions. To deny it a hearing on the question presented by withholding the right of appeal from the order and the right to review the

order on appeal from the judgment except on condition that it forego all other defenses to the action and at the same time to withhold from it any writ of review which this court is confessedly authorized to grant, is, I think, to deny to the relator due process of law. I see no reason for denying the exercise of this supervisory power in favor of one whose constitutional rights have been invaded and denied and who has no other remedy. It is said that the duty of the circuit court in the premises was not clear or obvious because the questions of fact or law arising on the motion were difficult. I do not think this can be the test. The rights of persons can rest on no such ground. Whether or not the questions are difficult should be determined upon hearing upon the alternative writ.

It is thought that if we grant a writ of review in this case we must do so in every case of alleged defective service of a summons or other original process by which a party is brought into court no matter what the amount involved. If this were true I should consider it no objection to the exercise of the supervisory control. The same objection could be made to the exercise of any other duty of this court. A statute annulling the rule of *Corbett v. Physicians' C. Asso.* 135 Wis. 505, 115 N. W. 365, would remove this objection. But it is not true that a judgment for a few dollars, temporarily in force, would be so destructive of credit or cause such injury and damage as a judgment for half a million dollars, and therefore the amount claimed goes to the hardship of the party seeking relief. It is not only in contravention of legal right but also a great hardship to compel a person to submit to the jurisdiction of a tribunal foreign to that person and distant, it may be, thousands of miles from his domicile, as a condition of asserting the merits of the controversy in that tribunal. It is not only illegal but also a great hardship to so entrap one who perhaps has diligently read the law and in attempted compliance with it has refrained from appointing an agent in this state. I cannot reconcile the decision of

the majority of the court in finally refusing to exercise its
conceded power in the instant case with the law laid down
in *State ex rel. Fourth Nat. Bank v. Johnson, supra,* and
other cases in this court.    I think that where a court has the
power, and a probable legal wrong is shown for which there
is no other remedy, it is its duty to exercise its power and hear
the case.    I have no doubt that my brethren of the majority
take a different view of their judicial duty in refusing to
exercise for the relief of this relator a power which they
amply possess, but in my best judgment the failure to super-
vise and review the order in question would be a failure of
judicial duty on my part, a thing which I hope those who
come after us "shall never have tongue to charge me with."

I am authorized to say that Justices Siebecker and Ker-
win concur in the foregoing.