STATE of Wisconsin, Plaintiff-Respondent,

v.

C&S MANAGEMENT, INC., d/b/a Crossroads News Agency, Defendant-Appellant. †

Court of Appeals

*No. 94–3188–CR. Submitted on briefs November 20, 1995.—Decided December 27, 1995.*

(Also reported in 544 N.W.2d 237.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen M. Glynn* and *Robert R. Henak* of *Shellow, Shellow & Glynn, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. Under Wisconsin law a corporation defending criminal charges is not entitled to a preliminary examination. C&S Management, Inc. claims that this legislative classification, singling out corporations from all other felony defendants, violates the Equal Protection Clauses of the federal and Wisconsin constitutions. It asserts that there is a fundamental right to a preliminary examination and that the State must therefore provide all criminal defendants with this hearing. Alternatively, and assuming there is no fundamental right involved, C&S Management argues that there is no rational basis to support this legislative classification. We conclude, however, that C&S Management will not be deprived of a fundamental right. Therefore, because we also conclude that there is a rational basis supporting this classification, we affirm the trial court's order denying its motion for a preliminary examination.

In September 1994, the State charged C&S Management with two counts of exposing a minor to pornographic materials, a Class E felony. *See* § 948.11(2), STATS. As a result, C&S Management moved the trial court to hold a preliminary examination on the charges. It claimed that the exclusion of

corporations from the class of defendants entitled to such hearings under § 971.02, STATS., violated state and federal equal protection guarantees. The motion was denied and C&S Management renews its arguments to this court. We review these constitutional challenges de novo. *Village of Oregon v. Waldofsky*, 177 Wis. 2d 412, 417, 501 N.W.2d 912, 913 (Ct. App. 1993).

Although C&S Management raises separate claims under the federal and Wisconsin constitutions, the respective clauses are substantially similar and thus demand the same legal analysis. *See Treiber v. Knoll*, 135 Wis. 2d 58, 68, 398 N.W.2d 756, 760 (1987). Courts take different approaches to equal protection analysis depending upon two factors: who is affected and what stakes are involved. *See id.* at 70, 398 N.W.2d at 760. If the statute is targeted at a "suspect class" or affects a "fundamental right" courts will strictly scrutinize the statutory classification to determine if it promotes a compelling government interest and is narrowly drawn to achieve such interests. *See id.* Accordingly, legislative attempts to create classifications on the basis of race or national origin would receive stringent judicial attention. *See State v. Martin*, 191 Wis. 2d 646, 651-52, 530 N.W.2d 420, 422-23 (Ct. App. 1995). Likewise, statutory classifications affecting fundamental rights like procreation and free speech would be subject to strict scrutiny. *See id.*

Where such protected classes or rights are not implicated, however, judicial review is much more limited. The analysis applied to these forms of legislation is termed the "rational basis test" and only measures whether the classification is rationally related to a legitimate legislative purpose. *See State ex rel. Grand*

*Bazaar Liquors, Inc. v. City of Milwaukee*, 105 Wis. 2d 203, 209, 313 N.W.2d 805, 809 (1982).

C&S Management does not argue that it is a member of a protected class. Nonetheless, it asks us to aggressively review § 971.02, STATS., claiming that the "right" to a preliminary examination established by the statute is a "fundamental right." In support it primarily relies on *State v. Richer*, 174 Wis. 2d 231, 240-41, 496 N.W.2d 66, 69 (1993), which described how the preliminary examination was designed to limit the expense, delay, anxiety and embarrassment of unnecessary public trials that are borne by both the defendant and the community. C&S Management also cites various authorities which suggest that the preliminary examination provides a defendant with various "collateral benefits," such as the opportunity to view how the government's witnesses will testify. *See, e.g., Coleman v. Alabama*, 399 U.S. 1, 9 (1970) ("[T]he skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial . . . ."). It then seems to claim that these protections for the criminal defendant (and the community) are important, indeed, so important that they must be judicially acknowledged as a "fundamental right."

■

The State challenges C&S Management's characterization of the stakes involved in a preliminary examination. It acknowledges that the preliminary examination serves as the vehicle for protecting a defendant's constitutional right against incarceration on unsubstantiated charges. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56-58 (1991) (Fourth Amendment requires judicial determination of probable cause within forty-eight hours of warrantless arrest and

incarceration of suspect); *see also* WAYNE R. LAFAVE AND JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 14.2(a) (1984) (describing constitutional foundations to the preliminary examination requirement). The State asserts that the desire to prevent incarceration on unsupported charges is therefore the primary legislative purpose behind the preliminary examination requirement. *See State v. Solomon*, 158 Wis. 146, 150, 147 N.W. 640, 642 (1914).[1] The State further contends that this statutory requirement evinces a legislative remedy which fulfills the constitutional mandate of providing incarcerated defendants with a judicial determination of probable cause very soon after arrest.

To further bolster this argument, the State points to another class of criminal defendants, those persons charged with misdemeanors, who are also denied a preliminary examination. *See* § 971.02(1), STATS. ("If the defendant is charged with a felony . . . ."). This class of defendants, the State claims, is denied the benefit of

---

[1] Although the supreme court's recent description of the purposes behind the preliminary examination in *State v. Richer*, 174 Wis. 2d 231, 240-41, 496 N.W.2d 66, 69 (1993), made no reference to the conclusion in *State v. Solomon*, 158 Wis. 146, 150, 147 N.W. 640, 642 (1914), that preventing needless incarceration was the legislative purpose behind the preliminary hearing, we attribute this oversight to the different questions presented in each case. In *Solomon*, the defendant brought a direct claim that he was entitled to a preliminary hearing. *See id.* at 148, 147 N.W. at 641. The issue in *Richer*, however, focused on the State's ability to bring additional charges against a defendant after there had already been a preliminary examination. *See Richer*, 174 Wis. 2d at 236, 496 N.W.2d at 67. Indeed, the defendant in *Richer* was already bound over for trial. *See id.* at 237, 496 N.W.2d at 67. Thus, the *Richer* court had no reason to address whether preventing incarceration was a policy supporting the preliminary hearing requirement.

a preliminary examination because misdemeanant defendants generally are released on very low (or no) bail. *See* § 969.02(8), STATS. (setting maximum bail for misdemeanor defendants at the maximum fine for the offense); *see also Solomon*, 158 Wis. at 150, 147 N.W. at 642 (concluding that there was no statutory right to a preliminary examination for misdemeanor charges that were only triable before the former district courts).

We agree with the State's analysis. Constitutional case law makes clear that a judicial determination of probable cause must only be afforded *incarcerated*, or likely incarcerated, defendants. Our statute which calls for preliminary examinations satisfies that mandate. Thus, while we also partially agree with C&S Management's position that the statute implicates a "fundamental right," we hold that the fundamental right served by the statute is limited to providing a judicial determination of probable cause for incarcerated defendants or those who would be incarcerated but for the payment of a bond.

We further acknowledge that the statute also provides what our supreme court has termed "collateral benefits." But these benefits, which are only an incidental outgrowth of our preliminary hearing procedure, are not fundamental rights. Rather, these benefits are exactly what the case law says they are—collateral. *See Whitty v. State*, 34 Wis. 2d 278, 287, 149 N.W.2d 557, 560 (1967) ("These incidental fringe benefits . . . are not the real purpose of a preliminary examination . . . ."), *cert. denied,* 390 U.S. 959 (1968). While it is true that corporations lose these "collateral benefits" under the statute, it is not true that the corporations lose a fundamental right. Since

they cannot be incarcerated, the fundamental right component of the preliminary examination procedure has no relevance to corporations. They are denied only the nonfundamental benefits associated with the procedure. And these are rooted in legislative largesse, not constitutional mandate. *See State v. Dunn*, 121 Wis. 2d 389, 394, 359 N.W.2d 151, 153 (1984). We therefore hold that the corporate defendant does not have a fundamental right to a preliminary examination under § 971.02, Stats.

We now turn to the second phase of the equal protection analysis and ascertain whether there is a rational basis supporting the legislature's decision to place corporations into a special subclass. Here, C&S Management bears the burden of proving that the classification within the preliminary examination requirement is unconstitutional beyond a reasonable doubt. *See State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989).

Our search for a rational basis is informed by the fundamental right analysis outlined above. We have identified how the preliminary examination requirement is part of a legislative effort to protect the fundamental constitutional rights of persons who may be incarcerated on baseless charges. In addition, we also recognize that the many secondary purposes of the preliminary examination outlined in *Richer*, e.g., preventing a trial when there are no grounds for charging, all essentially reflect a second legislative concern: the proper use of judicial resources. *See Richer*, 174 Wis. 2d at 240-41, 496 N.W.2d at 69.

Thus, the rationale underlying the corporate exception begins to emerge. The United States Constitution requires the legislature to allocate court time to

insure that every incarcerated person is given access to a judge for a determination of probable cause. On the other hand, the legislature has also recognized that a more intricate evidentiary hearing during the pretrial phase may reveal weaknesses in the State's case that would otherwise go unchallenged until trial. Requiring a preliminary hearing, as opposed to just the ex parte determination that the Constitution requires, thereby saves court time over the long run.

Thus, the legislature had two goals when it created the preliminary hearing procedure. It satisfied the constitutional concern that a judicial hearing be afforded to those exposed to the possibility of pretrial jail time. And it also satisfied a desire to help the judicial system operate efficiently by using the preliminary hearing as a means of uncovering weak cases before they went to trial. But just because the procedure carried with it certain incidental benefits for criminal defendants does not mean that the benefits have to be provided to every criminal defendant.

Since corporations cannot be incarcerated, the legislature faced no constitutional mandate to provide these hearings. Moreover, it obviously decided that this class of defendants should not be given a preliminary hearing simply to insure that there is a strong case because there are other procedures that can serve this goal, namely, a motion to dismiss the complaint. *See* § 971.31(2), STATS. Thus, the only remaining reason to justify granting corporations a statutory right to a preliminary examination was to provide them with the "collateral benefits" of being able to target potential weaknesses in the State's case. Here, however, the legislature concluded that the necessary court time could be put to a better use. Indeed, the court time that C&S

Management asks us to allocate for its preliminary examination can instead be used to permit a natural person who is behind bars the opportunity for an earlier judicial determination of probable cause.

Therefore, the creation of the corporation exception to the preliminary hearing requirement was nothing more than a rational policy choice about how to best proceed in operating an efficient court system. Although this legislative choice denies corporations the added fruits that a preliminary examination gives to other defendants, this does not mean that the legislature was forbidden from making this decision.

C&S Management, however, argues that the specialized corporate exception does not make sense when one considers that other forms of business enterprises, such as partnerships, could also be criminally charged and could not be incarcerated, but would nonetheless be entitled to a preliminary examination.

■

Assuming that these other entities could be criminally charged, C&S Management's argument is founded on a premise that all legislation must be perfectly designed to meet its purpose. While this may be a requirement when courts apply strict scrutiny, *see, e.g., Treiber*, 135 Wis. 2d at 70, 398 N.W.2d at 760 (is the legislation "narrowly drawn"), such statutory perfection is not required to pass the rational basis test. *Cf. Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) ("The legislature may select one phase of one field and apply a remedy there, neglecting the others."). And although the corporate exception originally was set out in 1881, *see* Laws of 1881, ch. 173, § 1, we observe that the legislature did add limited liability companies to this class when it introduced this form of business organization in 1993. *See* 1993 Wis. Act 112,

§ 425. Contrary to C&S Management's position, the legislature is pursuing this issue in a rational manner.[2]

Finally, we address C&S Management's argument that the Remedy for Wrongs provision of the Wisconsin Constitution requires that we modify the law and expand the statutory right to a preliminary examination to include any defendant who may benefit from such a hearing. *See* WIS. CONST. ART. I, § 9.[3] As the State illustrates, however, this provision may only be used to correct a legislative oversight or error when such a correction is needed to secure a preexisting right. *See James A.O. v. George C.B.*, 182 Wis. 2d 166, 175, 513 N.W.2d 410, 413 (Ct. App. 1994). Since we hold above that a corporation has no fundamental right to a preliminary hearing and that there is a rational basis to

---

[2] C&S Management also complains that the corporate exception, which dates back to 1881, was founded on the "anti-corporate feelings" which were prevalent in the legislature during the latter part of the 19th century. To support its argument, it cites various newspaper articles from that period which document public sentiment. Nevertheless, we have identified a rational basis for this legislation. We need not address this specific argument because under the rational basis test, we must hold in favor of constitutionality if we can conceive of any reason on which the legislation could reasonably be based. *See State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989).

[3] This section provides:

**Remedy for wrongs.** SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obligated to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

support the denial of this statutory right to corporations, this court cannot rely on this article as a basis for rewriting the law. *Compare Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 182, 342 N.W.2d 37, 45 ("Because we conclude Therese Collins is entitled to a remedy at law for her injuries, we now consider [a remedy] to support her right to recovery."), *cert denied sub nom., E.R. Squibb & Sons, Inc. v. Collins*, 469 U.S. 826 (1984).

In summary, the legislature has developed a strategy whereby the court time that could be used to give corporations preliminary examinations is allocated to areas where there is a more pressing need. This is not an unreasonable goal. Nor is its strategy for achieving this goal without any rational basis.[4]

*By the Court.*—Order affirmed.

---

[4] Of course corporations, unlike other individuals who may be targeted because of race, ethnic background, etc., have the option of changing their organizational form if they perceive this legislative strategy to be unfair or unwise.